## KING v. BELCHER.

1. Under proceedings instituted in 1888 to revive a judgment obtained in 1875, the judgment will not be declared void because of its having been signed only by one who styled himself "deputy clerk," but who had never been regularly appointed to that position.

2. In February, 1875, when this judgment was obtained, the law gave to final judgments a lien for ten years, with a right to have that lien revived for a like period, if proceedings to that end were commenced within three years after the expiration of the ten. In December, 1885, this law was amended so as to read: "(1) A final judgment recovered in any court of record in this State subsequent to the 25th day of November, 1873, shall constitute a lien upon the real estate of the judgment debtor in the county where the same is entered for a period of ten years from the date of entry thereof. * * * (2) A final judgment may be revived at any time within the period of ten years from the date of the original entry thereof." *Held*, that the second subdivision of the amendatory act of 1885 was not intended to apply to judgments previously obtained. MR. JUSTICE McGOWAN, *dissenting*.

3. *Held, further*, that if so intended, the legislature could not deprive plaintiff of the right to revive within three years after the expiration of the ten, without giving a reasonable time, after the passage of such a repealing act, to institute the necessary proceedings.

Before WITHERSPOON, J., Abbeville, October, 1888.

This was a summons by Sallie G. King, executrix, to revive a
judgment against W. P. Belcher, administrator. The opinion
sufficiently states the case.

*Messrs. Benet & Cason* and *Parker & McGowan*, for appel-
lant.

*Mr. E. B. Gary*, contra.

March 18, 1889.   The opinion of the court was delivered by

Mr. Justice McGowan.   On February 6, 1888, the plain-
tiff issued a summons to revive a judgment for $11,277.85, which
was entered on February 15, 1875, and had been recovered on a
note under seal, bearing date in 1859.   The defendants objected
to the revival on two grounds: (1) Because no judgment was
ever entered according to law, for the reason that it was not
signed by the clerk of the court (Bowie), but by A. W. Jones,
who styled himself "deputy clerk," but who was never regularly
appointed as such, or his appointment approved by the court, &c.
(2) That the time within which the judgment could be revived
had expired.

The case was referred to W. A. Lee, Esq., as special referee,
who made a clear and full report: first, as to the manner in
which the judgment in the principal case was entered; as to
which he found as a fact that the judgment was enrolled and
tested by A. W. Jones as "deputy clerk," who had never been
regularly appointed to that office, but in the absence of the clerk
(Bowie) and of the regular "deputy" he had sometimes acted in
that capacity.   Under these circumstances he held that the objec-
tion was not fatal, but was met by the decision in *Clark* v. *Mel-
ton* (19 S. C., 498), that the signature of the clerk is not neces-
sary to give validity to a judgment.   Second, as to the point
whether the proceeding to revive had been commenced in time,
he indicated, as matter of law, that the plaintiff was not within
time (ten years from the original entry of the judgment) if the
act of 1885, repealing the proviso to the act of 1873, allowing
three years within which to revive a judgment after the expira-
tion of its lien, was constitutional and valid.   But he held that

the act of 1885, so far as it purported to repeal the proviso of the act of 1873, giving a supplemental three years within which a judgment might be revived, was unconstitutional and void as to all judgments (including this one) entered between 1873 and 1885.

Among other things he said: "The act of 1885 deprives the plaintiff of a vested and subsisting right, by depriving her of all power of renewal, since the period (ten years) subsequent to the recovery of the judgment (in 1875) had already expired at the passage of the act (1885). But it is contended that the right of action is still preserved on the judgment after the lapse of twenty years. If the owner of a judgment has any right under it, it is the right of immediate enforcement, when he may reach, perhaps, the property of the debtor; but to delay its enforcement, in nine cases out of ten, would be depriving him of all remedy. Taking this view of the matter, I regard the act of 1885 as unconstitutional and inoperative as to this judgment, and that the proceeding to revive it was duly instituted within the enlarged time (three years) given by the act of 1873," &c.

Upon exceptions this report was confirmed by Judge Witherspoon, who ordered the judgment revived. From this order the defendants appeal to this court upon the following grounds : "I. Because it was error to hold that the proceedings in this case were instituted under the act of 1873, section 310 of the Code, and that the summons was lodged within proper time. II. Because it was error to hold that the act of 1885 (19 *Stat.*, 223) is unconstitutional and inoperative as to this proceeding and judgment. III. Because it was error to hold that the judgment herein is a valid and subsisting judgment, and could be revived by summons after the lapse of ten years from its entry. IV. Because the presiding judge should have decided that the time for reviving by summons had expired, and that the court had no jurisdiction in the premises. V. Because it was error to allow the said judgment to be revived."

We agree with the referee and Circuit Judge that we cannot, especially at this late day and in this manner, declare that the judgment in the principal case was rendered absolutely void by the irregularity as to the manner in which it was entered. We do not see why the signature as "deputy clerk" by one who was

never regularly appointed to that office should be more fatal than an entire absence of signature by or for and in behalf of the clerk. See *Clark* v. *Melton, supra ;* 4 *Wait Prac.*, 671. As was said by the Chief Justice in the case of *Clark* v. *Melton :* "To hold that the failure of the clerk in the matter suggested here destroyed the judgment, would, in our opinion, be sacrificing substance to a shadow, and would overthrow established and adjudicated rights upon the merest technicality."

Then in reference to the time within which it was necessary to commence the proceeding to revive the judgment. The judgment was entered on February 16, 1875, and the summons to revive it was filed on February 6, 1888, within ten days of thirteen (13) years thereafter, and the question is whether that was within the time allowed by law. At the time the proceeding to revive was instituted (1888), the latest law upon the subject was the act of 1885 (19 *Stat.*, 229), which provided as follows : "That section 310 of the Code of Procedure [act of 1873] be and the same is hereby amended by the substitution therefor of a new section, to be known as section 310, which shall read as follows : Section 310. (1) A final judgment recovered in any court of record in this State, subsequent to the 25th day of November, 1873, shall constitute a lien upon the real estate of the judgment debtor in the county where the same is entered for a period of ten years from the date of entry thereof. * * * (2) A final judgment may be revived at any time within the period of ten years from the date of the original entry thereof," &c. According to this law it is perfectly clear that the ten years from the entry of the judgment having expired, the plaintiff's proceeding to revive *was not in time.*

But the plaintiff insists that her judgment was entered in 1875, before the above act was passed, and when the act of 1873 was of force, which had a provision as follows : "Provided, however, that the plaintiff in such judgment may at any time within three years after its active energy has expired, revive the judgment, with like liens as in the original, for a like period," &c.; and that under this proviso she acquired the privilege or right to revive for three years after the expiration of the lien of her judgment, which right so inhered in and attached to her judgment as

that it could not be divested retrospectively by the act of 1885, afterwards passed, but still existed for three years.

There is no question in the case as to whether it was the purpose of the act of 1885 to repeal the proviso of that of 1873, allowing the three years in addition to revive. It is certainly a general rule that a statute must not be construed retrospectively, unless it shall appear that it was so intended by the legislature. The act of 1885 simply re-enacts that of 1873, omitting the proviso which allowed the extra three years, and substituted for it the provision "that a final judgment may be revived at any time within the period of ten years from the date of the original entry thereof," &c. The intention to repeal the proviso is plain. Indeed, it was properly admitted in the argument that the act of 1885 was intended to be retrospective in its character. But we do not understand that for that reason alone the act must be unconstitutional. All repeals must necessarily refer back to the act repealed. Whenever the intention is clear that the act should have a retrospective operation, it must unquestionably be so construed, however unjust and hard the consequences may appear. Retrospective laws do not fall within the prohibition against such laws contained in the constitution of the United States, unless they are *ex post facto*, or impair the obligation of contracts, or possibly divest vested rights of a certain character. See *Endlich on the Interpretation of Statutes*, sections 283, 284, 285; *Mc-Lure* v. *Melton*, 24 S. C., 559, and authorities cited. Of course, there is nothing *ex post facto* here, as that relates only to criminal proceedings.

Did the act of 1885, which purported to repeal the three years' proviso in that of 1873, impair the obligation of any contract, or materially affect the legal remedy for its enforcement? The contract between the parties was made in 1859, when the note was executed; and was to the effect that the creditor might sue the debtor to judgment, which, under the law then of force, would have a lien for twenty years. The lien of the judgment which might be recovered was not, however, the contract itself, but only a legal incident of the judgment. As was said in the case of *Moore* v. *Holland*, 16 S. C., 22: "A well recognized distinction is drawn between the contract itself and its obligation. The con-

25—30

tract is the agreement of the parties, the obligation is the remedy which the law affords for its enforcement. * * * When, then, an act is passed which materially interferes with and impairs the legal remedy which the courts afforded before the passage of the act, for the enforcement of contracts, such act is unconstitutional," &c. And the same case held that the lien for twenty years on real estate, which the previous law allowed to decrees and judgments, was no part of the remedy of enforcement, and consequently decided "that the act of 1870, declaring that final judgments thereafter rendered should not of themselves constitute a lien upon real or personal property, but that such lien might be obtained by levy, &c., did not impair the obligation of contracts entered into prior to its passage," &c.

If the point should arise, we suppose, of course, that the same would be ruled as to the act of 1873, which restored the lien of a judgment, reduced, however, to ten years, with the supplemental provision as to the power to revive it within three years; and it follows, as a matter of course, that if the plaintiff had recovered her judgment after the act of 1885, she would, according to the same principle, have been bound by that act, as to the time within which she could revive it, without the least reference to the date of her note or the doctrines as to the impairment of its obligation. So that it seems clear upon authority, that the allegation of unconstitutionality in the act of 1885, so far as it affected the proviso of the act of 1873, cannot be sustained on the ground that it impaired the obligation of the original contract entered into before its passage, when the remedies for enforcing it were in some respects different.

Conceding this, however, the plaintiff invokes the doctrine of "vested rights." She insists that the act of 1873 declared the right to revive a judgment within the three years of grace, and that when she came in and recovered her judgment under the act, that right *eo instanti* vested in her—not by reason of the obligation of the original contract, but by virtue of her judgment, and that such right could not be destroyed by the subsequent repeal of the act that gave it. This view is not without force. Undoubtedly there are rights of property vested under statutes which are properly held sacred—protected from destruction by subse-

quent repeal of the statute, but this cannot be affirmed of all rights created by statute. "It is very true that the repeal of an act will not divest rights vested under it." *Ex parte Graham,* 13 Rich., 277. But the general rule being that the legislature which enacts may also repeal, the inquiry is always legitimate, whether a right claimed under a statute repealed was or was not so "vested." It is often difficult to determine whether a right was so vested as to be beyond the reach of repeal. It seems to be one of the matters which cannot be safely reduced to fixed rules. After some effort to find such a rule, I must say that I agree with what my brother McIver said in *McLure* v. *Melton,* 24 S. C., 571: "It is very difficult, if not impossible, to define precisely the rights [under statute] which are so vested as to be protected from legislative interference, as is shown in the discussion of the subject by that eminent author, Judge Cooley," &c.

The right to revive a judgment for three years after the expiration of its active energy, can hardly be called a vested right, according to the ordinary meaning of the term. We can understand that it would have been in the nature of a vested right, if the lien itself had been expressly extended over the three years; but the proviso gave only a right to acquire a new lien within a certain time and by proper proceedings. This right was in one particular somewhat analogous to that of the statute of limitations. It is true that the latter statute (limitations) does not, like the proviso, create the right affected, as well as limit the time for its exercise, but merely fixes a period beyond which an existing right may not be enforced. The rights may differ in this respect, but nevertheless we cannot doubt that the right given by the proviso appertained to the remedy afforded for the enforcement of the judgment. It is settled as a general rule, that the right to a particular "remedy" is not a vested right, unless it is a part of the right itself. It is also settled that the remedy may be "modified" as the wisdom of the State may direct, without impairing the obligation of a contract; but it is equally well settled that any legislation which "materially diminishes" the remedy given by law to the creditor, at the time his contract is made, just so far impairs the obligation of the contract. It is said that "the obligation would be nugatory if all remedy to en-

force it were taken away, and it would be impaired if the remedy were obstructed and rendered imperfect." See *State* v. *Carew*, 13 Rich., 498, and the authorities.

Now, considering the proviso of 1873 as a part of the remedy afforded by law at the time the judgment was recovered, was that remedy merely "modified" or "materially diminished," "obstructed or rendered imperfect," as the result of its repeal by the act of 1885? The time allowed by the proviso of the act of 1873 for proceedings to revive had not expired at the passage of the act of 1885, which cut off entirely all that remained of the three years. It may be that the repealing act did not disturb the right to sue on the judgment as it then existed, and even if it extended that right beyond "twenty years," yet we cannot consider that as an adequate substitute in place of the summary remedy given by the proviso. We cannot say that the referee and Circuit Judge erred in holding that the act of 1885 "deprived the plaintiff of all power of renewal," and in that went beyond the conceded power to "modify the remedy," and is inoperative as to plaintiff's judgment.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER. I concur in the result upon two grounds, which I will proceed to state briefly.

1st. It does not seem to me that, under the well settled rule respecting retrospective legislation, the act of 1885 can be given a retroactive effect. It is quite clear that there are no words in the act expressly declaring an intent that it shall be retrospective, so far at least as the renewal of judgments is concerned, and I think it is equally clear that there is nothing in the act which necessarily implies such an intention. It will be observed that section 2 of the act, which is the only portion of it relating to section 310 of the Code of Procedure, is divided into five subdivisions, each relating to distinct and different subjects; and while subdivision 1 does in terms refer to judgments recovered after 25th of November, 1873, there is no such reference in subdivision 2, which is the only subdivision relating to the renewal of judgments. On the contrary, the language there used is : "A final

judgment"—which, under the well settled rule as to retrospective legislation, must be read as: "A final judgment *hereafter* entered." It will also be observed that the introductory language of section 2 of the act of 1885, referring to section 310 of the Code (the act of 1873), is not, as we often find, that such section be *stricken out* or *repealed*, but the language is that the section be *amended*. So, too, the repealing clause of the act of 1885 does not in terms repeal so much of the act of 1873 as had been inserted in the Code as section 310, but it only repeals such acts and parts of acts as are inconsistent with the act of 1885. If, therefore, a prospective and not a retrospective operation be given to subdivision 2 of section 2 of the act of 1885, there is nothing in the provisions of that subdivision inconsistent with so much of the provisions of section 310 of the Code as prescribe the time within which a judgment recovered after November 25, 1873, may be renewed, but they may both stand together—the one applying to judgments recovered after November 25, 1873 and before the passage of the act of 1885, while the other applies to judgments recovered after the passage of that act.

2nd. But even if I should be in error in the view just presented, there is another ground, alluded to in the opinion of Mr. Justice McGowan, upon which the judgment below should be affirmed. Conceding, for the purpose of this inquiry, that the legislature could, without infringing the constitution, reduce the time previously allowed for the renewal of judgments previously recovered, in analogy to the doctrine by which legislation altering the time within which an action may be brought, has been sustained, even when applied to existing causes of action, yet the rule in such cases is that such legislation must afford a reasonable time within which existing rights of action may be enforced. As is said in *Cooley on Cons. Lim.*, 366 (2nd edit.): "It is essential that such statutes shall allow a reasonable time after they take effect for the commencement of suits upon existing causes of action." This rule would be clearly violated if the act of 1885 is applied to this case, for no time whatever has been allowed the plaintiff to renew her judgment after the passage of the act. Under the law as it stood up to the time of the passage of the act of 1885, the plaintiff had a right to renew her judgment at any

time within the period prescribed by the act of 1873 or section 310 of the Code, to wit, thirteen years; and, under the rule above stated, the legislature could not deprive her of such right, without affording her a reasonable time for the exercise of such right, after the passage of the act reducing the time originally allowed—and this the act of 1885 fails to do. The time, as prescribed by the act of 1885 (ten years from the date of the original entry of the judgment), had expired before the passage of that act, and the plaintiff, relying on the law in force at the expiration of the ten years' from the original entry of her judgment, was fully justified in forbearing to exercise her right of renewal within that period, because the law then informed her that she would be allowed an additional period of three years within which she might exercise such right; and she could not be deprived of such additional time under the rule above stated, unless the depriving act had allowed her a reasonable time after its passage to exercise her existing right of renewal. But the act of 1885, so far from making any such provision, would, if applied to this case, absolutely destroy the plaintiff's right to renew her judgment, guaranteed to her by the law in force at the time she recovered her judgment, and which continued in force up to the time of the passage of the act of 1885, which, it is claimed, destroyed her then existing right.

If the legislature should pass an act in such terms as made it clearly retrospective, reducing the period prescribed for the limitation of a right of action on a promissory note from six to four years, such act could not, under the rule, be applied to an action on a note which had been past due for five years at the time of the passage of such act. Upon the same principle I do not think the act of 1885 can be applied to this case.

MR. CHIEF JUSTICE SIMPSON concurred in the result and in the separate opinion of Mr. Justice McIver.

Judgment affirmed.